UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALTON HUBBARD,

    Plaintiff,    Case No. 2:19-cv-52

v.    Honorable Paul L. Maloney

UNKNOWN THEUT et al.,

    Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants for failure to state a claim.

## Discussion

  I.  Factual allegations

    Plaintiff Alton Hubbard is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County,

Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Alger County, Michigan. Plaintiff sues LMF Correctional Officers Unknown Schram and Unknown Loman. He also sues Hearing Officer Unknown Theut, who works at the MDOC's Office of Legal Affairs in Lansing, Michigan.

Plaintiff alleges that Officer Schram issued him a Class I misconduct ticket for threatening behavior. Apparently, the misconduct ticket asserted that three prisoners complained that Plaintiff had threatened to stab them unless they stabbed their cellmates. The misconduct ticket was based on confidential kites from the three complaining prisoners. Plaintiff asserts that the misconduct ticket violated prison policy because it was unsupported by any evidence.

Plaintiff learned about the ticket on December 7, 2017, after he was handcuffed and taken to segregation. Officer Loman reviewed the ticket with Plaintiff that same day. Plaintiff asserts that Officer Loman should have returned the ticket to Schram because the ticket was defective.

On December 13, 2017, Hearing Officer Theut conducted a misconduct hearing and found Plaintiff guilty, despite the fact that Plaintiff could not defend himself because he did not know the identity of the prisoners who accused him or the details of their accusations.

As a result of the misconduct conviction, Plaintiff was placed in temporary segregation for 6 days, punitive detention for 10 days, and administrative segregation for 146 days. He also received seven "disciplinary points," which increased his security level and prevented him from participating in level II educational programs, including "A.A., N.A., gardening, Cage your rage, or Thinking for a change[.]" (Compl., ECF No. 1, PageID.4.) Plaintiff describes his confinement in administrative segregation as "solitary confinement" with no phone privileges and only one hour of yard time, three times per week. (*Id.*, PageID.5.)

According to the attachments to Plaintiff's complaint, Plaintiff sought a rehearing and his request was granted because Plaintiff did not receive adequate notice of the charges against him. (*See* Request for Rehearing Response (Aug. 21, 2018), ECF No. 1-1, PageID.18.) At the rehearing, prison officials chose not to identify the victims, so the Hearings Administrator dismissed the charges against Plaintiff. (Request for Rehearing Response (Sept. 17, 2018), ECF No. 1-1, PageID.21.)

Plaintiff claims that Defendants deprived him of due process. Defendants Schram and Loman allegedly failed to give Plaintiff proper notice of the charges and evidence against him. Defendant Theut found Plaintiff guilty without disclosing the facts and evidence and against him. Plaintiff also contends that he was denied equal protection because he was treated differently from other prisoners.

As relief, Plaintiff seeks compensatory and punitive damages, the removal of "SPONs"[1] from his prison file, and the removal of the disciplinary points.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

---

[1] SPON is an acronym for Special Problem Offender Notice.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff contends that Defendants deprived him of due process in connection with the charges and the conviction for his Class I misconduct. A prisoner's ability to raise a due process challenge to a prison misconduct conviction depends on whether the convictions implicated any liberty interest. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the

Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff does not contend that the consequences of his misconduct charge and conviction will inevitably affect the duration of his sentence, nor can he. He is facing a life sentence. *See* MDOC Offender Tracking Information System (OTIS) – Offender Profile for Alton Hubbard, at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=431061 (visited Mar. 6, 2019). In other words, he is not eligible for parole; thus, a prison misconduct conviction could not have any impact on the duration of his sentence. Moreover, according to the documents attached to Plaintiff's complaint, the conviction at issue was overturned.

In addition, Plaintiff has not alleged an atypical and significant hardship. Plaintiff alleges that he was held in temporary and disciplinary segregation for 16 days, followed by approximately five months of administrative segregation. Confinement in administrative segregation generally does not give rise to a liberty interest because it "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

5

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation and/or confinement in segregation for a relatively short period of time do not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Rimmer-Bey,* 62 F.3d at 790-91 (30 days of punitive segregation followed by reclassification to administrative segregation is not atypical and significant); *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding); *see also Bradley v. Evans*, No. 98-5861, 2000 WL 1277229 (6th Cir. Aug. 23, 2000) (confinement in administrative segregation for fourteen months). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff's case is similar to those in which the Court of Appeals held that an extended period of confinement in segregation did not give rise to a liberty interest. In *Baker*, the prisoner was confined in administrative segregation (i.e., solitary confinement) for more than two and a half years while the state investigated his possible involvement in a prison riot. *Baker*, 155

F.3d at 811-12. The Court of Appeals determined that, while the length of the plaintiff's confinement in segregation was unusual, it was not "atypical" considering the reasons for that confinement. *Id.* at 812. Moreover, the plaintiff's conditions of confinement were "not much different than that experienced by other inmates in segregation." *Id.* at 813.

In *Bradley*, the plaintiff, much like Plaintiff in this case, contended that he was convicted of a misconduct without receiving notice of the details of the incident, such as the location and identity of the victim. He was given 20 days of "punitive segregation" followed by confinement in administrative segregation for fourteen months. *Bradley*, 2000 WL 1277229, at *2. The court held that his case was indistinguishable from *Rimmer-Bey*, *Mackey*, *Jones*, and many cases from other circuits, all of which held that lengthy periods of confinement in segregation do not constitute an atypical and significant hardship. *Id.* at *7 (collecting cases).

Like the plaintiffs in *Rimmer-Bey*, *Baker*, and *Bradley*, Plaintiff alleges that he was given a relatively brief disciplinary sanction and then reclassified to administrative segregation, where he remained for several months. Following the logic of these cases, Plaintiff's allegations are not sufficient to demonstrate that his confinement in segregation implicated a cognizable liberty interest.

Plaintiff also alleges that he received disciplinary points which increased his security level. However, for the same reason that Plaintiff's placement in administrative segregation does not implicate a protected liberty interest, a decision that impacts Plaintiff's security level does not deprive Plaintiff of a protected liberty interest. In other words, reclassification to a new security level is much like, and certainly no worse than, placement in administrative segregation; such a change does not subject a prisoner to an atypical and significant hardship. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (holding that "an increase

7

in security classification . . . does not constitute an atypical and significant hardship") (internal quotation marks omitted).

Furthermore, Plaintiff does not have a protected liberty interest in access to prison educational programs. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee). Because Plaintiff has no liberty interest in the educational programs, he was not entitled to due process before Defendants took action that terminated his ability to participate in those programs.

In short, Defendants did not deprive Plaintiff of a protected property or liberty interest. Consequently, they did not deprive him of due process. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

**B. Equal Protection**

Plaintiff contends Defendants deprived him of equal protection by treating him differently from similarly-situated prisoners. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v.*

8

*Murgia,* 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right under the Constitution to avoid disciplinary sanctions that result in punitive segregation, changes in security level, and loss of access to prison education programs.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff's assertion of disparate treatment is wholly conclusory. He does not support it with any facts. For instance, he fails to identify any

9

other individuals who were treated differently from him. Thus, he fails to state an equal protection claim.

### C. Prison Policy

To the extent that Plaintiff claims Defendants failed to abide by prison policy, he fails to state a cognizable claim under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). Thus, the fact that Defendants did not comply with prison policy is not sufficient to state a claim under § 1983.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: March 14, 2019  /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge